GRANT A. FORBES and Others, Respondents, Impleaded with VELMA FORBES and Another, Plaintiffs, *v.* CITY OF JAMESTOWN, Appellant.

Fourth Department, March 11, 1925.

Municipal corporations — sewers — action to recover damages suffered by plaintiffs, farm owners and milk producers, alleged to have been caused by contamination from sewage of creek flowing through farms — cause of typhoid epidemic was traced to plaintiffs' milk — plaintiffs were required to pasteurize milk, were prohibited for a short time from selling, and lost customers — defense that typhoid germ carrier on plaintiffs' farms was source of epidemic — finding that germs causing epidemic came from sewage is supported by evidence — verdict represents several as well as joint damages — objection to verdict not sustained in absence of preliminary motions to separate causes or for separate verdicts — instructions — error to charge in effect that burden was on defendant to show that sewage was not source of epidemic — error to charge that jury might reach verdict on reasonable probabilities.

In an action by the plaintiffs, two of whom owned separate but adjoining farms near the defendant city and, in connection with the other plaintiff, conducted a dairy business on said farms and operated a milk route in the city, to recover damages suffered by them as the result of a typhoid epidemic traced to milk produced by them, resulting in largely reduced patronage, necessity for pasteurizing the milk, and the prohibition against their selling milk in the city, the verdict of the jury in favor of the plaintiffs, finding that the cause of the typhoid epidemic was due to sewage deposited in a creek above the plaintiffs' farms, which creek flowed through plaintiffs' farms and through their pasture lands, and that the cause of the epidemic was not due to the presence of a typhoid germ carrier residing on plaintiffs' farms, is supported by the evidence.

Though two of the plaintiffs owned separate farms, and though all three of them were copartners in the production of milk on the farms, they were properly joined as party plaintiffs under section 209 of the Civil Practice Act, and though the case presented was one for several as well as for joint damages, the defendant will not be heard to complain on appeal against the joint verdict, since it failed to take advantage of its right to have the separate causes of action separately stated and numbered, or to have a severance of the individual claims from the joint cause of action and separate trials thereof, or to request separate verdicts on the joint causes of action and the several causes of action.

It was error for the court to charge, at the request of the plaintiffs, that even though they might find that the alleged typhoid germ carrier was actually a germ carrier, that they might return a verdict for the plaintiffs unless they also find that the alleged germ carrier contaminated the milk and that the contamination did not come from the polluted creek, for the effect of the charge was to place the burden on the defendant of proving that the creek was not the cause of the epidemic, whereas that burden rested on the plaintiffs.

It was likewise error for the court to charge, at the request of the plaintiffs, that the jury, though they might not speculate as to the source of the epidemic, would be permitted to reach a verdict upon a reasonable probability as established by the evidence; a verdict must be based upon evidence or reasonable inferences that are justified from the established facts, and not upon mere probabilities.

APPEAL by the defendant, City of Jamestown, from a judgment of the Supreme Court in favor of the respondents, entered in the office of the clerk of the county of Chautauqua on the 22d day of May, 1924, upon the verdict of a jury, and also from an order entered in said clerk's office on the 20th day of June, 1924, denying defendant's motion for a new trial made upon the minutes.

*Ernest Cawcroft [C. A. Pickard* of counsel], for the appellant.

*Jackson, Manley & Herrick [Robert H. Jackson* of counsel], for the respondents.

CLARK, J.:

This action is for damages caused by the alleged pollution of the Cassadaga creek by sewage from the city of Jamestown.

Plaintiffs Grant A. Forbes and Merle R. Forbes own separate but adjoining farms near the city of Jamestown, and they and the plaintiff Ray Forbes conduct a dairy business on said farms and operate a milk route in the city.

Cassadaga creek is a sluggish, crooked stream flowing past the farms owned by two of the plaintiffs. Defendant's sewer discharges into the stream a few rods above these farms, and plaintiffs' cattle had access to this stream.

In July, 1923, an epidemic of typhoid fever broke out in the city of Jamestown and it was traced to the Forbes milk.

As soon as it was ascertained that a large majority of the typhoid fever cases were in families that were using the Forbes milk, plaintiffs were directed by the health authorities to pasteurize their milk, and there is some evidence that for a brief period they were prohibited from delivering milk in the city.

The fact that the typhoid epidemic was traced to milk produced by plaintiffs resulted in a largely reduced patronage, and they claim to have suffered serious damage, not only because the value of the farms was decreased by pollution of the contiguous waters, but because of the loss suffered by plaintiffs by reason of the fact that the milk produced by them became infected with typhoid germs.

It is well established that riparian owners have remedy for the pollution of waters constituting a nuisance. The remedy furnished may be by injunction or for damages, or both. (*Chapman* v. *City of Rochester*, 110 N. Y. 273; *New York Central & H. R. R. R. Co.* v. *City of Rochester*, 127 id. 591; *Strobel* v. *Kerr Salt Co.*, 164 id. 303; *Butler* v. *Village of White Plains*, 59 App. Div. 30.)

Damages to a going business for loss of profits may be awarded. (*Reisert* v. *City of New York,* 174 N. Y. 196; 1 Suth. Dam. [4th ed.] § 70.)

The right to pollute a stream is not gained by prescription (*Lumley* v. *Village of Hamburg,* 181 App. Div. 441); nor is the remedy of the riparian owner lost through estoppel by acquiescence. (*Chapman* v. *City of Rochester, supra; Gale* v. *City of Syracuse,* 35 Misc. 465.)

It is the contention of plaintiffs that the sewage discharged by defendant into Cassadaga creek was the cause of the infection of their milk and the resultant typhoid epidemic in the city.

Defendant denies that and claims that there was a typhoid carrier in plaintiffs' family, who was in the habit of washing and handling the milking utensils, and that the milk infection and the epidemic which followed came by way of the typhoid carrier in plaintiffs' family and not from the sewer.

The important questions of fact involved in this litigation are:

*First.* Was the milk sold by plaintiffs in the city of Jamestown just prior to the breaking out of the typhoid epidemic in July, 1923, infected by the sewage discharged by the city, or by the typhoid carrier, as claimed by defendant?

*Second.* If it was infected by the sewage, was it from sewage deposited in the creek by this defendant, or by some other municipality or party?

There was some evidence that sewage from the village of Falconer emptied into this stream, but at a point a considerable distance above the mouth of defendant's sewer, but the quantities of sewage from this source were very small as compared with the quantity emptied into the creek by the city of Jamestown.

In the summer of 1923 there was a period of unusually low water in this creek and the outlet of defendant's sewer was exposed, and the sewage discharged into the creek contained typhoid germs.

The case was tried on the theory that defendant was maintaining a nuisance in emptying a large quantity of typhoid infected sewage into the Cassadaga creek. Plaintiffs were awarded a verdict of $12,000. Defendant urges that the judgment should be reversed for the following reasons: (1) The evidence that the typhoid germs infecting plaintiffs' milk came from the sewage stream is too remote and speculative. (2) Plaintiffs may not sustain a verdict in their favor because it represents several as well as joint damages. (3) There were harmful errors in the instructions given to the jury.

It was not disputed that plaintiffs' milk was infected with typhoid germs. Plaintiffs contend that its source was in the sewage of this

creek, and that their cows wading in the stream carried the germs on their bodies, and that flies passing from the stream to the barn, either by flight or on the bodies of the animals, were carriers, and that the utensils used in connection with the milk, or the milk itself, were thus infected.

Defendant's theory, as heretofore stated, is that one or more of the persons residing on plaintiffs' farm were typhoid carriers, and that the infection was caused through handling the milk utensils by these carriers, or by other persons in contact with them, or by washing of clothing in the milk house.

There was no positive evidence that the epidemic of typhoid fever originated from the Jamestown sewage. Owing to the fact that typhoid germs are microscopic in size, the method of infection cannot be determined by direct proof, but proof of the source of infection must be circumstantial.

There was evidence of infection both in the stream and the carrier. The presence of typhoid germs in the milk was not disputed. The facts were all before the jury by the best evidence that was available, and it was for the jury to draw the inferences from the established facts. (*Stubbs* v. *City of Rochester*, 226 N. Y. 516; *Swistak* v. *Erie R. R. Co.*, 208 App. Div. 553; affd., 239 N. Y. 549.)

In *Hart* v. *Hudson River Bridge Co.* (80 N. Y. 622) this language is used: " When from the circumstances shown, inferences are to be drawn which are not certain and incontrovertible, and may be differently made by different minds, it is for the jury to make them."

In *Chisholm* v. *State of New York* (141 N. Y. 246) it is said: " If different conclusions can be drawn from these circumstances it is a question for the jury."

There was a serious dispute as to whether any person on the farm was a typhoid carrier, and if so whether such person came in contact with the milk.

Under the evidence there was a question of fact on the issue of what caused this typhoid epidemic, and the finding of the jury is supported by ample evidence.

Defendant urges that this verdict cannot be sustained because it represents several as well as joint damages.

Different riparian owners having a common grievance might always unite as plaintiffs in a suit in equity to obtain a remedy for pollution of waters. (*Strobel* v. *Kerr Salt Co.*, *supra*.) It has long been the rule that in both legal and equitable actions parties having interests may unite as plaintiffs, though affected in a different degree. (*Loomis* v. *Brown*, 16 Barb. 325; Code Civ. Proc. §§ 446, 448; Civ. Prac. Act, §§ 194, 195, 209.)

Under the present practice all persons may be joined in one

action as plaintiffs in whom any right to relief arising out of the same transactions is alleged to exist, whether jointly or severally, or in the alternative, where if such persons brought separate actions any common question of law or fact would arise. (Civ. Prac. Act, § 209.)

The complaint alleges separate ownership by Grant A. Forbes and Merle R. Forbes of farms of 100 acres and 64 acres respectively, and that all the respondents have operated thereupon a dairy and general farming business; that they are deprived of the use of the water of the stream and have been obliged to provide other means of supply for domestic animals; the rental value of their land is diminished; the use of large areas for pasture has become impossible; the value of the farm buildings and equipment have been largely depreciated and damaged thereby; and that plaintiffs have been obliged to endure discomforts and damage because of the discharge of sewage into the stream. There was evidence in support of these allegations.

There was presented, therefore, a case of several as well as of joint causes of action arising out of a single transaction.

The present legislative and judicial policy is to make practice more simple and to obtain speedy results and diminish the cost of litigation. (*Akely* v. *Kinnicutt,* 208 App. Div. 487; affd., 238 N. Y. 466; *Wilcox* v. *Mutual Life Ins. Co.,* 235 id. 590, 596.)

No doubt defendant might have required the separate causes of action to be separately stated and numbered by timely motion. (Rules of Civil Practice, rules 90, 102, 105; *Fleitmann & Co., Inc.,* v. *Colonial Finance Corp.,* 203 App. Div. 827; *Peacock* v. *Tata Sons, Ltd.,* 206 id. 145.)

Likewise, upon proper application it might have obtained severance of the individual claims from the joint cause and separate trials thereof (Civ. Prac. Act, § 209); or upon request at the trial it might have required separate verdicts on the causes of action alleged. Failing in this, defendant's right to complain of a single verdict is doubtful. The different elements of damage were submitted for the consideration of the jury. As between the plaintiffs and the defendant, the amount of damages is fixed. It is only the respective rights of the plaintiffs therein that remain undetermined. (*Costello* v. *N. Y. Central & H. R. R. R. Co.,* 238 N. Y. 240.) Under the circumstances the defendant is not greatly concerned in that question, and has not been prejudiced by the general verdict in the absence of some vital and harmful error.

The judgment could, therefore, be sustained were it not for the fact that there were certain erroneous instructions given to the jury that require a new trial.

After the main charge of the learned justice had been delivered various requests were made, only two of which require serious consideration.

Just before the case was submitted counsel for plaintiffs made the following request: " I ask your Honor to charge the jury that even though they might find that she [Ida Forbes] was a carrier, unless they also find she contaminated the milk, and that Cassadaga Creek did not, that they may return a verdict for the plaintiffs in this case." This was charged and defendant duly excepted.

I think this was a substantial error, for it had the effect of placing the burden on defendant of proving that the Cassadaga creek did not cause the epidemic, whereas the burden of proving that the epidemic came from the creek rested upon the plaintiffs. (*Searles* v. *Manhattan R. Co.,* 101 N. Y. 661; *Francey* v. *Rutland R. R. Co.,* 222 id. 482; *Ford* v. *McAdoo,* 231 id. 155.)

Counsel for plaintiffs also made the following request which was charged by the court: " I ask your Honor to charge the jury that while they may not speculate as to the source of the epidemic, they may reach a verdict upon a reasonable probability as established by the evidence." Defendant's counsel duly excepted to this charge.

This instruction was erroneous because the jury could not be permitted to speculate and base a verdict upon mere probabilities. The verdict must be based upon evidence or reasonable inferences that are justified from the established facts. (*Swistak* v. *Erie R. R. Co.,* 208 App. Div. 553; affd., 239 N. Y. 549; *Warner* v. *N. Y., O. & W. R. Co.,* 209 App. Div. 211.)

In a case perfectly clear upon the facts, these instructions taken in connection with the main charge might be regarded as harmless. But here the evidence as to what caused the typhoid epidemic was entirely circumstantial. It was, therefore, highly important that the jury should be carefully instructed in the manner of arriving at a verdict.

While the jury may in the light of experience take into consideration the probabilities of the existence of a fact as established by testimony in reaching a conclusion, it requires something more than a probability, however reasonable, to form the basis of a verdict. (*Rommeney* v. *City of New York,* 49 App. Div. 64; *Blaikie* v. *Post,* 137 id. 648.)

The judgment and order should be reversed on the law and a new trial granted, with costs to appellant to abide the event.

HUBBS, P. J., DAVIS, SEARS and CROUCH, JJ., concur.

Judgment and order reversed on the law and a new trial granted, with costs to appellant to abide event.